IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MULTISCAFF LIMITED,       )<br>    Plaintiff,       )<br>       )<br>    v.       )<br>       )<br>APTIM FEDERAL SERVICES, LLC,       )<br>    Defendant.       )<br>       ) | Civil Action No. 3:23CV22 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on its own initiative. After the question of venue was raised in Defendant's Reply in support of its Motion to Dismiss, the Court ordered briefing on the issue; briefing is now complete. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court will transfer this matter to the Alexandria Division of the Eastern District of Virginia.

**I. FACTUAL BACKGROUND**

Plaintiff Multiscaff Limited ("Multiscaff") is a foreign limited company incorporated in the United Kingdom with its principal place of business located at The Scaffold Depot, Fields New Road, Chadderton, Oldham, Lancashire, England OL9 8BT. Compl. ¶¶ 2–3.[1] In 2019, Multiscaff entered a contract to provide and maintain scaffolding and sheeting, along with dedicated personnel, for a repair project at Naval Support Facility Diego Garcia ("NSF Diego Garcia"), a United States Military installation on the island of Diego Garcia in the British Indian Ocean Territory (generally, "the Project"). *Id.* ¶¶ 2, 6, 9. Multiscaff's contract was with Ferrous

---

[1] The Court utilizes the pagination applied by the CM/ECF system, and not necessarily documents' internal numbering.

Protection Limited ("FPL"), a subcontractor for Defendant Aptim Federal Services, LLC ("APTIM"). *Id*. ¶ 7. APTIM in turn was the prime contractor for the Project, pursuant to its contract (the "Prime Contract") with the Air Force Civil Engineer Center ("AFCEC"). *Id.*; Prime Contract, ECF No. 39-1.

Defendant APTIM is a Louisiana limited liability company with its corporate headquarters located at 4171 Essen Lane, Baton Rouge, Louisiana 70809. Compl. ¶ 3. At the time it executed the Prime Contract, however, APTIM was headquartered in Alexandria, Virginia. *See* Prime Contract 1; Decl. of Aidan Delgado, at ¶ 3, ECF No. 20-2. Upon information and belief, APTIM's members are citizens of Texas, Louisiana, and New York. Compl. ¶ 4. No publicly available information located to date indicates that any of APTIM's members are foreign citizens. *Id*. ¶ 4.

Multiscaff initiated the present litigation against APTIM after Multiscaff's sub-subcontract was terminated, yet APTIM allegedly continued to use the materials provided by Multiscaff for the Project, without providing payment to Multiscaff. *Id*. ¶¶ 20–23.

## II. PROCEDURAL HISTORY

Plaintiff Multiscaff filed its Complaint on January 10, 2023. ECF No. 1. Defendant APTIM filed a Motion to Dismiss for Lack of Jurisdiction and Improper Venue, ECF No. 19, on February 15, 2023. In its Reply in support of that Motion, ECF No. 25, Defendant first suggested that the matter, were it not to be dismissed, should be transferred to the Alexandria Division of the Eastern District of Virginia. The Court ultimately ruled that dismissal was not proper, but that Defendant's transfer argument likely had merit, and accordingly ordered the parties to brief the issue. *See* Order, ECF No. 51. On August 16, 2023, Plaintiff filed its Further Objection to the Transfer of Venue of this Action to the Alexandria Division ("Plaintiff's Objection to Transfer"), ECF No. 52. On August 21, 2023, Defendant filed its Reply to Plaintiff's Objection to Transfer

("Defendant's Reply"), ECF No. 53.

### III. LEGAL STANDARD

At the district level, venue is proper either (1) in a district where any defendant resides, if all defendants are residents of the state in which that district is located ("residential venue"); (2) a district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated ("transactional venue"); or (3) a district in which any defendant is subject to the Court's personal jurisdiction, if neither (1) nor (2) apply ("fallback venue"). 28 U.S.C. § 1391(b); *see also* 14D Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure: Jurisdiction §§ 3805, 3806, 3806.1 (4th ed. 2021) (using the terms "residential," "transactional," and "fallback," respectively, to refer to subsections (1), (2), and (3) of section 1391(b)) (hereinafter "Wright & Miller"). In this District, however, this is not the end of the analysis, as venue must also be proper in the particular *division* within the District in which a plaintiff files. *See* E.D. Va. Local Civ. R. 3(C) ("Local Rule 3(C)").[2] In determining the proper division in which an action shall be filed, the district-level venue rules stated in 28 U.S.C. § 1391 also apply, albeit with the substitution of the word "division" for "district" in venue options (1)–(3) above. *Id*. In other words, Local Rule 3(C) modifies § 1391 to apply the venue analysis at the division level. So, for venue to be proper under Local Rule 3(C), there must be residential venue, transactional venue, or (if neither of those exist) fallback venue in the division. *See id.*

---

[2] Local Rule 3(C) states in full:

Civil actions for which venue is proper in this district shall be brought in the proper division, as well. The venue rules stated in 28 U.S.C. § 1391 et seq. also shall apply to determine the proper division in which an action shall be filed. For the purpose of determining the proper division in which to lay venue, the venue rules stated in 28 U.S.C. § 1391 et seq. shall be construed as if the terms 'judicial district' and 'district' were replaced with the term 'division.'

E.D. Va. Local Civ. Rule 3(C).

When a plaintiff files suit in the wrong district or division, the district court shall either dismiss the action or, if it is in the interest of justice, transfer such case to any district or division in which it could have been brought. 28 U.S.C. § 1406(a).

## IV. DISCUSSION

The Court first addresses the question of whether venue is proper in the Richmond Division of the Eastern District of Virginia, before turning to the question of whether the matter should be transferred.

**A. Divisional Venue Analysis**

Plaintiff bases its contention for why venue is proper in the Richmond Division on a waiver theory. Plaintiff's waiver theory is premised on the applicable forum selection clause in this case, which reads, in relevant part: "the sole and exclusive venue for any litigation . . . shall be the United States District Court for the Eastern District of Virginia, or, should that court lack jurisdiction, Alexandria Circuit Court." Mem. Op. 5, ECF No. 49. Plaintiff makes two distinct waiver arguments based on the clause; the Court addresses each argument in turn.

    1. <u>The Impact of this Court's August 9, 2023, Memorandum Opinion</u>

At the outset, Plaintiff argues that this Court need not engage in a venue analysis applying Local Rule 3(C) because this Court previously held that the operative forum selection clause applied and made personal jurisdiction and venue proper, via contractual waiver, in the Eastern District of Virginia. Pl.'s Obj. Transfer 2–3, ECF No. 52. Thus, Plaintiff contends, the Court's opinion requires it to likewise hold that venue is proper, via waiver, in any division in the Eastern District, including this one. *Id.*

However, this Court's prior Memorandum Opinion did not hold that the applicability of the forum selection clause meant that Defendant had waived any divisional venue objection under

the Local Rules. The Court's decision to deny Defendant's Motion to Dismiss for Improper Venue was based on the Supreme Court's directive that "a case filed in a **district** that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." *See* Mem. Op. at 25 (emphasis added) (quoting *Atl. Marine Const. Co.*, 571 U.S. 49, 56 (2013)). Accordingly, the Court's venue analysis, which accepted Defendant's assertion that "the venue inquiry collapses into the personal jurisdiction analysis," was focused on the district level, and judgment was explicitly reserved as to the appropriate division level venue. *Id.*; *see also id*. at 25 n.5.

Additionally, the Court's prior acceptance of the instant forum selection clause as dispositive of the question of venue in the Eastern District of Virginia does not logically mean that the Court must hold now that the forum selection clause is dispositive as to the question of venue in the Richmond Division. As discussed in the Memorandum Opinion, the forum selection clause places "venue" in "the Eastern District of Virginia," and it does not specify a division. *Id.* at 5. It is the law in this District that a forum selection clause that merely places venue in this District and does not select a division does not obviate the need for a Local Rule 3(C) division-by-division venue analysis. *Hughes v. DynCorp Int'l, LLC*, 2020 WL 2201675 at *5 n.2 (E.D. Va. May 6, 2020) (Novak, J.) ("[A]lthough . . . [the] contract places venue in this District, . . . Local Rule 3(C) specifies the proper division for Plaintiff's claims once they are placed here. Indeed, [the] contract does not specify the division in this District in which claims arising from the contract could or should be brought, so Local Rule 3(C) controls.").

Accordingly, the Court's reasoning in its prior Memorandum Opinion does not control the outcome of the present, division-level analysis. The Court must begin afresh and analyze the propriety of venue in the Richmond Division under Local Rule 3(C)'s modifications of 28 U.S.C. § 1391.

2. <u>Analysis of Venue under § 1391, as Modified by Local Rule 3(C)</u>

Here, the applicable part of the federal venue statute is the residential venue provision, 28 U.S.C. § 1391(b)(1),[3] as expanded upon by § 1391(d). Under § 1391(b)(1), as modified by Local Rule 3(C), venue is proper "in a [division] where any defendant resides, if all defendants are residents of the State in which that [division] is located." APTIM is the sole defendant in the present case, and thus its residency is determinative. Per 28 U.S.C. § 1391(d),[4] as modified by Local Rule 3(C),

> [f]or purposes of venue . . . in a State which has more than one [division] and in which a defendant that is a corporation[5] is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any [division] in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that [division] were a separate State, and, if there is no such [division], the corporation shall be deemed to reside in the [division] within which it has the most significant contacts.

Under § 1391(d), as modified by Local Rule 3(C), the narrow question is whether APTIM "has sufficient minimum contacts in the forum [division]." *See Newbauer v. Jackson Hewitt Tax*

---

[3] The transactional venue provision, 28 U.S.C. § 1391(b)(2), is unavailable because "a substantial part of the events or omissions giving rise to the claim" did not occur in either this District or Division, nor is "a substantial part of property that is the subject of the action" situated here. § 1391(b)(2). Likewise, the fallback venue provision, § 1391(b)(3), is not triggered because, as the Court will explain, subsection (b)(1) is available in this case.

[4] Virginia has multiple districts and divisions, so § 1391(d) (and not § 1391(c)) applies to determine APTIM's residency.

[5] Though § 1391(d) refers only to a "corporation" (whereas § 1391(c) refers to "an entity with the capacity to sue and be sued in its common name under applicable law"), § 1391(d), as modified by Local Rule 3(C), applies to LLCs like APTIM because "[f]or purposes of venue, an unincorporated association, such as an LLC, is treated like a corporation." *Tak v. Vyas*, No. 2:21cv93, 2021 WL 4552117, at *3 (E.D. Va. Oct. 5, 2021) (citing *Denver & R. G. W. R. Co. v. Brotherhood of Railroad Trainmen*, 387 U.S. 556, 559–60 (1967)); *see, e.g.*, Wright & Miller, *supra*, § 3812 ("Because courts had long equated the residence of corporate and unincorporated associations, and because Congress gave no indication of a desire to change that equivalence—indeed, quite the opposite—Section 1391(d) should be applied to unincorporated associations."); *Graham v. Dyncorp Int'l, Inc.*, 973 F. Supp. 2d 698, 701 n.2 (S.D. Tex. 2013) ("Despite this distinction in the current statute, the Court feels compelled to follow the precedent that reads the 'corporation' language to refer to unincorporated entities like LLCs."); *see also, e.g.*, *Liverett v. Dyncorp Int'l, LLC*, No. 3:17-cv-282, 2017 WL 9481048, at *2 (E.D. Va. July 18, 2017) (Gibney, J.) (applying 28 U.S.C. § 1391(d) as modified by Local Rule 3(C) to a defendant LLC); *Jimenez v. JC Resorts Mgmt. LLC*, No. 222cv816, 2022 WL 17722644, at *2 (E.D. Cal. Dec. 15, 2022) ("[S]everal district courts—including this Court—have applied § 1391(d) to LLCs.").

*Serv. Inc.*, No. 2:18cv679, 2019 WL 1398172, at *6 (E.D. Va. Mar. 28, 2019) (Doumar, J.). "If so, [APTIM] is deemed to 'reside' there for venue purposes" under § 1391(b)(1). *See id.* "If [APTIM] does not have sufficient minimum contacts in any of the judicial [divisions] in the State, it will be deemed to reside in the [division] within which it has the 'most significant' contacts." *Id.* (quoting § 1391(d)).

Applying the relevant standard, it is clear that there is no residential venue in the Richmond Division, but there is residential venue in the Alexandria Division. In this case, there are no alleged contacts between APTIM and the Richmond Division. *See, e.g.*, Def.'s Reply 5–6, n.20, ECF No. 25. *See generally* Pl.'s Obj. Transfer 1–5. Thus, there can be no "contacts . . . sufficient to subject [APTIM] to personal jurisdiction if th[e] [Richmond Division] were a separate State," nor can the Richmond Division be where APTIM "has the most significant contacts." 28 U.S.C. § 1391(d). The only contacts between APTIM and any division of this District are in Alexandria. Alexandria is where APTIM used to have its principal place of business, including when it executed the Prime Contract. The Court need not decide whether these "contacts would be sufficient to subject [APTIM] to personal jurisdiction if that [division] were a separate State" because even if the contacts were not, Alexandria, being the only division in which APTIM has any contacts, is necessarily "the [division] within which it has the most significant contacts." *Id.* Accordingly, APTIM "reside[s]" in the Alexandria Division *only*. *Id.*

Plaintiff's argument that divisional venue is made proper in the Richmond Division by the instant forum selection clause is unavailing. Much like it did above, Plaintiff contends that, because the operative forum selection clause references simply the Eastern District of Virginia and not any specific division, and because this clause represents Defendant's waiver of any objection to personal jurisdiction in the Eastern District of Virginia, divisional venue is proper in any

division, including the Richmond Division. Pl.'s Obj. Transfer 4–5. Plaintiff rests its analysis and arguments on the case *United States v. Leebcor Services, LLC*, No. 1:20-cv-533, 2020 WL 13526744 (E.D. Va. Nov. 25, 2020), where the district court found that a forum selection clause providing for suit "only in the federal or state courts" of Virginia constituted a valid waiver of personal jurisdiction as to any division of the Eastern District of Virginia, which in turn opened the door to venue in any division. *See Leebcor*, 2020 WL 13526744 at *4.

However, Plaintiff's reliance on *Leebcor* is misplaced. In *Leebcor*, venue at both the district and divisional level was premised on § 1391(b)(3)'s fallback provision, which can only apply if the residential and transactional venue provisions do not. *Id.*; *see also id.* at *3 (finding no venue pursuant to § 1391(b)(1) or (b)(2)). Under § 1391(b)(3), venue may lie in "any judicial district [or division] in which any defendant is subject to the court's personal jurisdiction with respect to such action." Accordingly, the venue question in *Leebcor* was a pure question of personal jurisdiction, which in turn was answered as a pure matter of waiver of personal jurisdiction. *See Leebcor*, 2020 WL 13526744 at *4. But in the present case, venue is predicated on § 1391(b)(1)'s residential venue provision. And as recited above, APTIM's residency is determined by where its "contacts would be sufficient to subject it to personal jurisdiction if that [division] were a separate State, and, if there is no such [division], . . . the [division] within which it has the most significant contacts." 28 U.S.C. § 1391(d). In other words, the instant venue question is not a pure question of personal jurisdiction; it is instead a question of *contacts* (and those contacts need not even suffice to establish personal jurisdiction). *Id.* In this residential venue analysis, § 1391(d) leaves no room for consideration of a consent-based personal jurisdiction theory.[6] *See id.* Accordingly, the fact that the *Leebcor* court found divisional venue proper under

---

[6] By holding that § 1391(d) does not allow the establishment of residency under § 1391(b)(1) on the basis of a waiver to divisional personal jurisdiction, this Court is not saying that no party can ever waive an objection to

8

§ 1391(b)(3) due to a "waive[r] [of] any objections to *personal jurisdiction*" in the forum division, *Leebcor*, 2020 WL 13526744 at *4 (emphasis added), has no bearing whatsoever on the instant § 1391(b)(1) question of whether APTIM has sufficient "contacts" in the forum division to render divisional venue proper. 28 U.S.C. § 1391(d). Because *Leebcor* is inapposite, Plaintiff's argument that divisional venue is proper because of a waiver to divisional personal jurisdiction fails.[7]

Accordingly, the Court finds that venue is improper in the Richmond Division because there are no contacts between Defendant and this division, yet contacts exist between Defendant and another division (Alexandria) sufficient to satisfy the residency requirements of §§ 1391(b)(1) and (d).

**B. Transfer Analysis**

Having found no basis for venue in the Richmond Division but concluding that venue would be appropriate in the Alexandria Division, the Court has the discretion to either dismiss or transfer the case. 28 U.S.C. § 1406(a).[8]

Under § 1406(a), "[t]he district court of a [division] in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (as modified by Local Rule 3(C)). In *Goldlawr, Inc. v. Heiman*, the Supreme Court held that if a plaintiff files

---

divisional venue. A party could, for example, waive a divisional venue objection by its litigation conduct (e.g., not timely raising such an objection) or by contract (e.g., a forum selection clause that, unlike the operative one in this case, places venue in "the Eastern District of Virginia, *[X] Division*").

[7] And to the extent that Plaintiff's argument can be construed as one that divisional venue is proper under Local Rule 3(C) because the instant forum selection clause (placing venue in "the Eastern District of Virginia") constitutes a waiver of divisional venue, the Court finds that argument is foreclosed by persuasive, on-point district precedent. *Hughes*, 2020 WL 2201675 at *5, n.2 (Novak, J.) ("[A]lthough . . . [the] contract places venue in this District, . . . Local Rule 3(C) specifies the proper division for Plaintiff's claims once they are placed here. Indeed, [the] contract does not specify the division in this District in which claims arising from the contract could or should be brought, so Local Rule 3(C) controls.").

[8] Contrary to Plaintiff's argument, this is not a case subject to discretionary transfer pursuant to § 1404(a), because there is no basis for venue in the Richmond Division to begin with.

9

a case in an improper venue, the "interest of justice" may require that a court transfer the case to the proper venue rather than dismiss the case entirely. 369 U.S. 463, 467 (1962). The *Goldlawr* Court noted that dismissing a case because a plaintiff chose to file suit in what turned out to be an improper venue could lead to a plaintiff losing "a substantial part of its cause of action under the statute of limitations" simply because it made a mistake. *Id.* at 466. Further, the "language and history" of § 1406(a) "show a congressional purpose to provide as effective a remedy as possible to avoid precisely this sort of injustice." *Id.* The Court observed that if a plaintiff filed suit, they clearly intended to begin the case and to toll the applicable statutes of limitations. *Id.* at 467. Therefore, Congress recognized that "'the interest of justice' may require" transferring rather than dismissing the complaint so the plaintiff is not punished by "time-consuming and justice-defeating technicalities." *Id.* (quoting *Internatio-Rotterdam, Inc.*, v. *Thomsen*, 218 F.2d 514, 517 (4th Cir. 1955)).

Courts generally favor transfer over dismissal for the reasons outlined by the Supreme Court in *Goldlawr* unless there is evidence of an improper venue choice "in bad faith or to harass defendants." *Id.*; *Symbology Innovations, LLC v. Lego Sys.*, 158 F. Supp. 3d 916, 935 (E.D. Va. 2017). Here, there is no evidence of bad faith, and the Court accordingly finds that it is in the interest of justice to transfer the case to the Alexandria Division, where it could originally have been brought. 28 U.S.C. § 1406(a); *Conte v. Virginia*, No. 3:19-cv-575, 2020 WL 3883251, at *7–8 (E.D. Va. July 9, 2020) (finding that the interest of justice is served by transferring a case where it could have initially been brought.)

## V.  CONCLUSION

Because venue properly lies in the Alexandria Division of the Eastern District of Virginia, and because there is no basis for venue in the Richmond Division, the Court will exercise its

discretion pursuant to 28 U.S.C. § 1406 and transfer the case to the Alexandria Division.

    An appropriate order shall issue.

                                  /s/ _____  
                                  Roderick C. Young  
                                  United States District Judge

Richmond, Virginia  
Date: <u>October 6, 2023</u>